IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STUART ROSEN, §<br>§<br>Plaintiff, §<br>§<br>vs. §<br>§<br>SPRINT/UNITED MANAGEMENT §<br>COMPANY, §<br>§<br>Defendant. § | | CASE NO. __4:19-cv-1659__ |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

NOW COMES Plaintiff, Stuart Rosen, and files this, his Original Complaint and Jury Demand against Defendant, Sprint/United Management Company concerning certain grievances arising under the Age Discrimination and Employment Act and the Texas Commission on Human Rights Act, Tex. Lab. Code § 21.001, et seq.  In support thereof Plaintiff respectfully shows the following:

### I.
### PARTIES

1. Plaintiff, Stuart Rosen, is an individual who resides in Harris County, Texas.

2. Defendant, Sprint/United Management Company, is a wholly owned subsidiary of Sprint Corporation and is a foreign for-profit corporation registered and doing business in the State of Texas.  Defendant may be served by serving its registered agent for process, The Prentice-Hall Corporation System at 211 E. 7th Street, Ste. 620, Austin, Texas 78701.

## II.
## JURISDICTION & VENUE

3. Jurisdiction is proper pursuant to 28 U.S.C. § 1331 because this case asserts claims for violations of Age Discrimination in Employment Act, which provides for federal question jurisdiction. Pursuant to 28 U.S.C. 1367, this Court has supplemental jurisdiction over state "claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."

4. Venue is appropriate in the Southern District of Texas because the acts giving rise to this suit occurred in Harris County, Texas.

## III.
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. Rosen timely filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission, which was dual filed with the Texas Workforce Commission – Civil Rights Division. Rosen received a right to sue letter from the EEOC and brought suit in federal court within the requisite time frame. All conditions precedent to the bringing of this lawsuit have been satisfied and fulfilled.

## IV.
## FACTUAL BACKGROUND

6. Rosen began working for Sprint Corporation in November 1983 right out of college as an entry-level Inside Sales Representative.

7. Rosen was promoted several times over the 33 years he was with the Sprint, from Sales Representative to Major Account Manager (1986), to Global Markets Account Manager – Retention (1991), to Regional Account Manager – Enterprise (2010), and finally to National Account Manager – Enterprise (2011) (title later changed to Client Director).

8. Rosen held the position of Client Director for six years prior to Sprint's termination of his employment.

9. Over the course of his employment, Rosen won numerous sales awards, including multiple Presidents Club awards, and his team was named the winner of the 2013 – Sprint Discovery Executive Presentation.

10. In July 2014, Rosen signed a 5-year, $12 million contract with his largest customer, Air Liquide.

11. Rosen received high praise over the years and never had any disciplinary history.

12. Sprint, through his supervisor Brandon Davis, even refused Rosen's offer to step down in 2014 when the company made a call for voluntary separations.

13. Sales Director Jim Choate (now Vice President Enterprise, South Region) inform Rosen that he was too valuable to Sprint, and that they would need him as Sprint moved on to its next chapter.

14. With this statement and no disciplinary history, Rosen had no reason to believed that he would not continue to have a long career with Sprint.

15. In January 2016, Sprint changed its focus to its Wireline Business Unit.

16. In February 2016, Rosen was selected to move into the new Wireline Business Unit to work under Sales Manager Crystal Wengel who would be managing Client Directors in Houston, Dallas, and Tulsa.

17. Under the Wireline Business Unit, Client Directors were faced with the difficult task of convincing clients to disconnect their existing Sprint lines, install new Ethernet lines, and sign up for value added services along the way.

18. Rosen was the most tenured person on Ms. Wengel's team and had the most experience with the Wireline business, as it had been his primary focus for over 30 years.

19. However, within the first couple weeks, Ms. Wengel began questioning Rosen's management of his largest account, Air Liquide.

20. Sprint set demanding quotas for the new Wireline business. Early on it was apparent these quotas were unrealistic.

21. From October to December 2016, the majority of Client Directors did not meet the new quotas.

22. In December 2016, Ms. Wengel emailed all the Client Directors on her team about her concerns with the numbers.

23. Rosen was singled out for an action plan for not hitting some of the targets, though the majority of Client Directors were struggling to meet the targets.

24. In January 2017, Sprint acknowledged the goals for the new Wireline business were not readily attainable. Accordingly, Sprint modified aspects of the third-quarter compensation plan due to the large number of Client Directors not meeting performance quotas.

25. Despite Rosen's improving numbers, and acknowledgement from the company that the initial demands for the Wireline business were not attainable, Ms. Wengel gave Rosen a final written warning and issued another action plan on February 17, 2017.

26. Rosen was singled out from other Client Directors who were performing at the same level or worse than Rosen was.

27. Regardless, Rosen worked diligently to bring his numbers up and satisfy all the requirements of the action plans. Per Ms. Wengel's instructions: (1) Rosen set up strategic planning sessions (SAPs) with all of my major accounts; (2) Rosen scheduled and was

available for weekly one-on-ones with Ms. Wengel, although she was often unavailable; and (3) Rosen completed "state of the union" documents for each of my accounts before the deadline set by Ms. Wengel.

28. By the end of the first fiscal quarter for 2017 (January through March), Rosen achieved 145% of Sprint's disconnect quotas and earned 48 value added services points, more than other members of the team for the quarter.

29. Just as before Rosen's first warning in December, with his continued improvement in this newly developing business unit where many members were failing to meet the quotas, there was no legitimate business reason for Ms. Wengel to continue to single Rosen out.

30. Unfortunately, despite Rosen's continued improvement, Sprint, through Ms. Wengel, terminated Rosen's employment on May 8, 2017.

31. When Ms. Wengel terminated Rosen's employment, she made no reference to his latest action plan and offered no specific reason for the termination.

32. Ms. Wengel chose to terminate Rosen's employment right before Sprint again readjusted its new Wireline business goals for Client Directors. These adjustments would have significantly benefited Rosen's numbers.

33. Ms. Wengel also chose to terminate Rosen's employment with knowledge that two of his major accounts, Air Liquide and Engie, had stated their intentions to place new Wireline business orders with him.

34. Clearly, Ms. Wengel and Sprint had another agenda, they wanted Rosen gone.

35. In fact, prior to Rosen's termination, in or around April 2017 Rosen applied for another position within Sprint, the position of Local Account Manager – Indirect.  The position

would have been a lower level position, but Rosen wanted to continue his career with Sprint. But Sprint's objective was his termination.

36. Rosen was 57 years old when Sprint terminated his employment.

37. Ms. Wengel quickly replaced Rosen with Crista Johnson who was significantly younger than he was. Johnson was in her 40s.

38. Ms. Johnson was less experienced than Rosen, and had previously been laid off by Sprint twice before she was hired to replace Rosen.

39. In fact, there had been layoffs in the Wireline Business Unit. Sprint further discriminated against Rosen because of his age in its layoff practices. Though Sprint has offered severance packages to other employees, at the age of 57 and after 33 years of employment with Sprint, Rosen was not even afforded a severance.

40. Sprint's termination of Rosen's employment was discriminatory, done because of his age.

41. Sprint's actions were in violation of the Age Discrimination in Employment Act and the Texas Labor Code.

## V.
## CAUSE OF ACTION: ADEA DISCRIMINATION BY DEFENDANT

42. Defendant's actions, including but not limited to its termination of Rosen's employment, were undertaken because of his age.

43. Defendant's actions constitute violations of the Age Discrimination in Employment Act.

44. Defendant replaced Rosen with a younger, less qualified individual.

45. Due to Defendant's actions, Rosen has suffered, and continues to suffer, damages including but not limited to lost wages, both past and future, the value of fringe benefits,

emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

46. Defendant's actions were intentional, malicious, and committed with reckless indifference to Rosen's federally protected rights.

## VI.
## CAUSE OF ACTION: TCHRA AGE DISCRIMINATION BY DEFENDANT

47. Defendant's actions, including but not limited to its termination of Rosen's employment, were undertaken because of his age.

48. Defendant's actions constituted a continuing violation of the Texas Commission on Human Rights Act, Tex. Lab. Code § 21.001, et seq.

49. Defendant replaced Rosen with a younger, less qualified individual.

50. Due to Defendant's actions, Rosen has suffered, and continues to suffer, damages including but not limited to lost wages, both past and future, the value of fringe benefits, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

51. Defendant's actions were intentional, malicious, and committed with reckless indifference to Plaintiff's state-protected rights, entitling Plaintiff to compensatory and punitive damages under the Texas Labor Code, Chapter 21.

52. Defendant's actions were done with malice or reckless indifference to the legally protected rights of Rosen.

## VII.
## JURY DEMAND

53. Plaintiff hereby demands a jury trial on all issues, claims, actions, and defenses against Defendant.

## VIII.
## **PRAYER**

54. Plaintiff seeks all damages allowed pursuant to Title VII and the Texas Labor Code, including:

    (a) Plaintiff seeks lost wages including back pay, front pay, and lost economic opportunity.

    (b) Plaintiff seeks incidental and consequential damages.

    (c) Plaintiff seeks compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

    (d) Plaintiff seeks punitive damages because the actions of defendant were intentional, committed with malice, and/or made with a reckless disregard for plaintiff's statutory rights.

    (e) Plaintiff is entitled to an award of attorney fees and costs.

    (f) Plaintiff seeks pre- and post- judgment interest at the maximum rate allowed by law and liquidated damages.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that citation be issued, that Defendant be cited to appear, that upon a trial on the merits Plaintiff be awarded damages sought herein, and for such other and further relief to which Plaintiff is justly entitled.

Respectfully submitted,
WILEY WHEELER, P.C.

*/s/ Kalandra J. Wheeler*

Kalandra N. Wheeler* (Attorney-in-Charge)
Texas Bar No. 24051512
Robert J. Wiley*
Texas Bar No. 24013750

*Board Certified Specialist – Labor & Employment Law, Texas Board of Legal Specialization

1651 Richmond Avenue
Houston, Texas 77006
Telephone: (713) 337-1333
Facsimile:  (713) 337-1334
E-mail: kwheeler@robwiley.com